# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| MIKEL HART, | |
| Plaintiff, | |
| v. | CAUSE NO.: 1:18-CV-360-HAB-SLC |
| PRESTRESS SERVICES INDUSTRIES, LLC, | |
| Defendant. | |

## OPINION AND ORDER

This matter is before the Court on the Defendant Prestress Services Industries, LLC'S Motion for Summary Judgment [ECF No. 22], filed on November 15, 2019. Defendant requests judgment as a matter of law on all claims a former employee, Plaintiff Mikel Hart, has asserted against it under the Americans with Disabilities Act (ADA) and the Employee Retirement Income Security Act (ERISA) § 510. Defendant also seeks judgment as a matter of law on a state law retaliation claim and an Indiana statutory wage claim.

Plaintiff asserts that genuine issues of material fact preclude summary judgment because, drawing all reasonable inferences in his favor, genuine issues of triable fact exist necessitating this matter's submission to a jury. According to Plaintiff, Defendant's assertions of legitimate, non-discriminatory, non-retaliatory reasons for Plaintiff's termination are unworthy of belief.

For the reasons set forth below, the Court grants summary judgment in favor of Defendant on the federal claims and relinquishes jurisdiction of the remaining state law claims.

## FACTUAL BACKGROUND

On May 15, 2017, Defendant hired Plaintiff to serve as Safety Manager and as a member of its Human Resources team for its Decatur, Indiana, facility. John Swiger, the Corporate Safety

Manager, was Plaintiff's supervisor, as was the Plant Manager, Rick Link. As part of Plaintiff's Safety Manager duties, he was to administer all workers' compensation claims. Plaintiff was also tasked with performing daily walk throughs of the facility to ensure safety compliance, inspecting equipment, and ensuring that employees were properly using personal protective equipment. The Safety Manager maintained OHSA records and conducted and tracked employee safety and OSHA training.

On August 28, 2017, in his role as Safety Manger, Plaintiff was inspecting a prefabricated ladder that employees would be using to climb to a catwalk. He stepped two rungs up, about four feet off the ground, "did a hop, and the ladder started to come out, and [he] just held on and went flat back," landing on his back. (Pl.'s Dep. 53, ECF No. 24-1 at 10.) Plaintiff did not feel any pain related to the fall until hours later. Plaintiff completed an incident report, which he put in his "desk drawer for safe keeping." (Pl.'s Aff. ¶ 9, ECF No. 31-1 at 3.)[1]

Defendant's Accident Reporting Policy contained the following language:

Employee Reporting Requirements - must be reported verbally by the employee to their supervisor immediately and in writing by completing the appropriate incident form as required by this policy. This written report must be completed prior to end of shift or as directed by the Safety Manager.

\* \* \*

Employee Injury Report
The Injury Report form is to be fully completed by the injured employee immediately and submitted to their supervisor for their signature. The Plant Manager and Safety Manager will forward it to the Corporate Safety Manager, who will notify the insurance company when necessary. ALL INJURIES ARE TO BE REPORTED REGARDLESS OF HOW MINOR THEY MAY BE! (Example: use of adhesive bandage, cut finger, slight abrasion, pulled muscle, sore back.) This form must be completed by the employee regardless of how minor the injury may be.

---

[1] In his deposition, Plaintiff testified that he remembered filling out the report, but he did not recall the date. Witness report forms were signed on September 8, 2017.

(ECF No. 31-7.) Defendant's Incident Report Form indicates that it is to be completed "as soon as possible after an incident that results in injury or illness or after a minor injury, property damage or near miss that could have resulted in a serious injury of illness." (ECF No. 24-3.)

The first report Plaintiff made of the incident was to the plant manager, Rick Link, two days after the fall.[2] Plaintiff stated that he might need to seek medical attention, as he suspected he had suffered an injury. According to Plaintiff's deposition testimony, Link advised Plaintiff that corporate would not like that there had been a safety incident, as they had not had an accident in seven years. Link encouraged Plaintiff to go through health insurance instead of filing a workers' compensation claim if he needed medical attention. Link stated that doing so would be in Plaintiff's best interest. In his Affidavit filed in response to Defendant's summary judgment motion, Plaintiff avers that Link stated that those who use workers' compensation benefits get laid off—permanently. According to the Affidavit, Link requested that Plaintiff not report the fall to Swiger, as he did not want it to impact the plant's "accident free" days.

Plaintiff saw his doctor on September 6, 2017, for a previously set follow-up appointment related to his blood pressure medications. He complained of stomach and back pain. On September 13, Plaintiff presented to Dr. Rahn at Fort Wayne Orthopedics for back and leg pain. Dr. Rahn scheduled an MRI.

---

[2] The Plaintiff's testimony is that he informed Link of the incident two days after it occurred. Defendant denies that Plaintiff made this verbal report, but notes that the dispute is not material for purposes of summary judgment.

Plaintiff's only explanation for why he did not provide a written report for Link's signature on August 28, 2017, the date of the incident, is that there was no policy in place governing how the safety manager would report his own incident, and that this caused him some confusion. (Pl.'s Aff. ¶ 10.). However, the Accident Reporting Policy that Plaintiff has designated as evidence indicates that it was drafted in February 2016. On its face, the policy required that Plaintiff, as an injured employee, complete the form for the Plant Manager's (Link) signature so that it could be forwarded by the Plant Manager (Link) or Safety Manager (Plaintiff) to the Corporate Safety Manager (Swiger).

3

On October 6, 2017, Dr. Rahn informed Plaintiff that he had suffered a spinal cord compression at the T12-L1. Dr. Rahn recommended that Plaintiff undergo surgery. Plaintiff provided Defendant with a restriction worksheet, but the restrictions did not prevent Plaintiff from going to work and doing his job. Plaintiff's last day working on site at the Defendant's facility was October 10, 2017. On that date, Plaintiff informed Swiger that he would be undergoing surgery on October 12, 2017. (Swiger Aff. ¶ 11.)[3]

Plaintiff had an appointment with Dr. Rahn on October 11, 2017. Dr. Rahn completed FMLA documentation indicating that the duration of Plaintiff's condition was October 12, 2017, until about January 4, 2018.[4] Dr. Rahn indicated, under the section for job functions Plaintiff would be able to perform: "No work." (ECF No. 31-4 at 3.) The Restriction Worksheet that Dr. Rahn completed this same date indicated that Plaintiff would be off work beginning on October 12 for approximately twelve weeks due to an upcoming surgery. Plaintiff also completed an application for short term disability benefits.

When Plaintiff told Link about his surgery and asked about performing his HR duties at home during his recovery, Link agreed to allow Plaintiff to work from home at full pay during his recovery. Plaintiff began working from home on October 12. Although Plaintiff performed his Human Resources duties at home, he was not able to perform any of his safety manager duties. (Pl.'s Dep. 88, ECF No. 24-1 at 19.) At some point, a representative from Cigna called to inquire

---

[3] Swiger also avers that Plaintiff did not inform him that the surgery was related to a workplace incident or that he would be required to be off work for twelve weeks thereafter. In Plaintiff's Affidavit, submitted in response to Defendants' request for summary judgment, Plaintiff does not deny that he told Swiger, on October 10, that he was undergoing surgery on October 12. Plaintiff's Affidavit focuses on what he told Link on October 11 after an appointment with Dr. Rahn.

[4] Plaintiff was not eligible for leave under the Family Medical Leave Act because he had not yet been working for Defendant for at least twelve months.

about Plaintiff's application for short-term disability. When Plaintiff indicated he was working from home and being paid, the representative told Plaintiff he would not be eligible for short-term disability and Plaintiff withdrew his application. (Pl.'s Aff. ¶ 32.)[5]

On October 18, Plaintiff learned that his pre-operative testing revealed that he had suffered a heart attack in the recent past. Because of this, Dr. Rahn required Plaintiff to obtain clearance from a cardiologist before he would perform back surgery. Plaintiff informed Link of the new development, and that the cardiologist's first available appointment was in early November. Plaintiff informed Swiger that he did not yet have surgery, that no surgery was scheduled, and that his doctor had him off work anyway.

On October 30, 2017, Defendant terminated Plaintiff's employment. The letter provided to Plaintiff stated, in relevant part:

> We understand that you do not have a definitive time frame in which you may be released to return to work, and that you expect it will not be until the end of the year. Unfortunately, you have exhausted all time off that is available to you and, because you have not met the FMLA's length of service requirement, you are not eligible for FMLA leave. Although Prestress Services accommodated your absence since early October by allowing you to work, intermittently, from home, your need for an extended unexcused absence creates an undue hardship for Prestress Services and cannot be accommodated. As a result, your employment with Prestress Services is terminated effective as of the date of this letter, October 30, 2017.

(ECF No. 31-6.)

After Defendant terminated his employment, Plaintiff informed Defendant of the written incident report in his desk drawer. Plaintiff also made an official workers' compensation claim.

---

[5] During his deposition, Plaintiff did not claim that a Cigna representative indicated that he had to withdraw his application. Rather, he purported to rely on his own understanding of short-term disability. Plaintiff explains in his affidavit that, at the time of the deposition, he did not remember who told him to withdraw his application because he had been sitting for hours and was experiencing pain that made it difficult for him to recall. In neither instance, did Plaintiff state that Defendant was aware that he had withdrawn his application.

5

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact." *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (first citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); then citing *Swearnigen–El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)).

Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

## ANALYSIS

A.  **Americans with Disabilities Act-Discrimination**

Under the ADA, Defendant was prohibited from discriminating against Plaintiff "on the basis of disability." 42 U.S.C. § 12112(a). Failure to accommodate is a form of ADA discrimination. *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 851 (7th Cir. 2015) (citing 42 U.S.C. § 12112(b)(5)(A) ("Discrimination," for the purposes of Section 12112(a), includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business.")).

> Plaintiff asserts that
> 
> his ADA discrimination claim must proceed to trial because he was a qualified individual with a disability, he can establish a prima facie case of failure to accommodate under the ADA, he was a qualified employee who made a reasonable request for an accommodation, and a reasonable jury could conclude that he suffered an adverse job action on the basis of his disability.

(Pl.'s Brief 9, ECF No. 30.)

To survive summary judgment on any ADA claim that he is advancing, Plaintiff's submissions must create an issue of fact whether he was a "qualified individual." S*ee Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285 & n.4 (7th Cir. 2015) (noting that for either type of discrimination claim—failure to accommodate or disparate treatment—a plaintiff must establish that he is a "qualified individual"). A qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). There is no dispute in the record that, for the time period in question, Plaintiff satisfied the prerequisites for the Safety Manager and HR positions, but that he was not able perform the

7

essential functions of those positions absent some accommodation from his employer. Accordingly, he must show that a reasonable accommodation would have permitted him to perform the essential functions of his job.

In the general sense, a reasonable accommodation is any change in the work environment or in the way things are customarily done "that enables an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). The ADA defines a "reasonable accommodation" to include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). Whether the plaintiff meets the "qualified individual with a disability" definition is determined as of the time of the employment decision. *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 974 (7th Cir. 2000); *see also Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) (noting that when responding to an employer's motion for summary judgment, plaintiff has " burden to produce evidence sufficient to permit a jury to conclude that she would have been able to perform the essential functions of her job with a reasonable accommodation") (citing *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 863–64 (7th Cir. 2005)).

Plaintiff asserts that, on October 11, 2017, Defendant was willing to grant the requested accommodation of working from home for up to twelve weeks. Then, when Plaintiff notified Defendant that he had suffered a heart attack, the accommodation was no longer acceptable, and his employment was terminated. He contends that a jury could find that his requested

8

accommodation was reasonable on its face, considering the initial approval and lack of a legitimate reason for the reversal of the decision.

Defendant counters that a substantial change in the circumstances surrounding Plaintiff's leave justified its decision to terminate his employment. On October 11, Defendant received documentation that Plaintiff had a pending surgery date and would be off work from October 12 until about January 4, 2018. A week later, on October 18, 2017, Plaintiff informed Swiger (who believed surgery had been performed on October 12) that he had not yet had the surgery, no surgery had been scheduled, and his doctor still had him off work. At that point, Swiger considered Plaintiff's absence to be for an indeterminate amount of time.

"Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002) (citing *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001)). Seventh Circuit caselaw "leaves open the possibility that a brief period of leave to deal with a medical condition could be a reasonable accommodation in some circumstances." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017) (citing cases). "Intermittent time off or a short leave of absence—say, a couple of days or even a couple of weeks—may, in appropriate circumstances, be analogous to a part-time or modified work schedule, two of the examples listed in § 12111(9)." *Id.*

However, the Seventh Circuit has also stated, rather categorically, that the "[i]nability to work for a multi-month period" precludes a person from establishing that they are a qualified individual under the ADA. *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003); *see also Severson*, 872 F.3d at 481 ("Simply put, an extended leave of absence does not give a disabled individual the means to work; it excuses his not working."). "Common sense dictates that regular

9

attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job." *Jovanovic v. In–Sink–Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899–900 (7th Cir. 2000); *see also Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998) ("[A]n employee who does not come to work cannot perform the essential functions of his job.") (citing *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994)).

Plaintiff has failed to designate evidence that would permit a jury to conclude that his requested accommodation would have permitted him to perform the essential functions of his Safety Manager position. Although there is evidence in the record that he could perform many HR duties from home, he could not perform the Safety Manager duties. Plaintiff testified that performance of the Safety Manager duties required that he be on-site. (Pl.s' Dep. 28.) He also testified that when he was working from home, he was not able to perform any of his Safety Manager duties. (*Id.* at 88.)

Plaintiff attempts to downplay the impact of his absence in two ways. Neither of his arguments render his requested accommodation reasonable on its face. First, Plaintiff argues that his absence was not indefinite, but was a definitive six to twelve weeks. Plaintiff's Affidavit, which he provided in response to Defendant's motion for summary judgment, does not address what he told Swiger concerning his absence when he learned that he could not be immediately scheduled for surgery. Accordingly, Swiger's testimony on this point—that Plaintiff informed him he was unable to perform any work until after surgery and that surgery was not scheduled—remains unrefuted.

The remainder of Plaintiff's Affidavit also fails to create a genuine issue of material fact. Plaintiff avers that, after he learned of the heart issue on October 18, 2017, he "immediately

reached out to Defendant to inform them [sic] of this new diagnosis and spoke to Link on the telephone." (Pl.'s Aff. ¶ 35.) Plaintiff continues,

> I told Link what I had just learned, and that I would be seeing a cardiologist as soon as possible to get clearance to get the surgery schedule, and that the cardiologist's first available appointment was in early November. Link's response was "Oh," and he did not say anything else or ask any questions. I did not, nor did any doctor, indicate that this would necessitate needing any additional time off work, and the estimated time I needed off of work remained at least six weeks, at the most twelve.

*Id.*

Plaintiff's observation that he did not indicate additional time off would be needed when he communicated that he would be seeing a cardiologist, is beside the point. If he could not see a cardiologist for clearance until November, it stands to reason that his surgery would not occur until after that date. As the only other documentation indicated that January 4, 2018, was the expected return date *without* the complication of obtaining a cardiologist's clearance, his employer was not unreasonable in believing that his anticipated absence was for an unknown length of time and, in any event, would extend beyond January 4, 2018.

Even if the information Plaintiff provided to Defendant suggested that he would only be off work until January 4, that was an absence of nearly three months. Plaintiff has not identified a single case where such an extended absence was considered a reasonable accommodation. In fact, the Seventh Circuit explicitly rejected such a notion, stating that if "employees are entitled to extended time off as a reasonable accommodation, the ADA is transformed into a medical-leave statute—in effect, an open-ended extension of the FMLA. That's an untenable interpretation of the term 'reasonable accommodation.'" *Severson*, 872 F.3d at 482; *see also id.* at 479 (explaining that "[t]he ADA is an antidiscrimination statute, not a medical-leave entitlement").

Plaintiff offers a second argument in support of his claim that his requested accommodation was reasonable. He argues that Swiger, as the corporate safety manager could have filled in and

11

completed Plaintiff's duties at the Decatur facility. The basis for this argument is Plaintiff's Affidavit testimony that, shortly after he was hired, he learned that the position had been vacant for about eight weeks, during which time Swiger had performed the safety manager duties at the Decatur location.[6] Additionally, he was told during his orientation that Swiger's duties included covering for safety managers when they were off work for vacation or illness. The Seventh Circuit has

> repeatedly held that "[t]o have another employee perform a position's essential function, and to a certain extent perform the job for the employee, is not a reasonable accommodation." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013); *see Gratzl [v. Office of Chief Judges]*, 601 F.3d [674,] 680 [7th Cir. 2010] ("An employer need not create a new job or strip a current job of its principal duties to accommodate a disabled employee."); *Ammons [v. Aramark Uniform Servs., Inc.]*, 368 F.3d [809,] 819 [7th Cir. 2004]("The . . . accommodation [plaintiff] offered . . . is not . . . an accommodation that would permit [plaintiff] to perform the essential functions of his job; instead it would change the essential functions of his job.").

*Stern*, 788 F.3d at 289–90. What Plaintiff is suggesting is not simply a reallocation of duties among available members of a team of employees. *Id.*, 788 F.3d at 286 ("In a team environment, the ADA may require employers to think more flexibly about which functions are essential and what sorts of accommodations might be reasonable.").

Although the above cases are not directly on point, as they are within the context of an employee who is present at work, that certainly does not *help* Plaintiff. Regardless of who might have been able to cover Plaintiff's duties, his extended absence removed Plaintiff from the coverage of the ADA. Because Plaintiff bears the burden of establishing that he can perform the essential functions of his job with or without reasonable accommodation, he has not met this burden if the only accommodation he has ever suggested is not reasonable. *Gratzl*, 601 F.3d at

---

[6] Even if the Court could consider this information for the truth of the matter, it is a bare boned assertion that fails to take into account any impact this had on the organization, or what other measures Defendant took during the eight weeks.

680. Such is the case here, and Defendant is entitled to summary judgment on Plaintiff's claim that it discriminated against Plaintiff by failing to provide a reasonable accommodation.

**B.     Americans with Disabilities Act–Retaliation**

The ADA "prohibits retaliating against individuals (qualified or not) who have engaged in activities protected by the ADA, such as filing a Charge of Discrimination with the EEOC or requesting reasonable accommodations." *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018) (citing *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018)); 42 U.S.C. § 12203(a). Plaintiff contends that he was terminated from his employment in retaliation for requesting an accommodation.

Surviving summary judgment on a disability-based retaliation claim requires showing (1) statutorily protected activity; (2) adverse employment action; and (3) causal connection between the two. *Guzman v. Brown Cty.*, 884 F.3d 633, 642 (7th Cir. 2018). The ultimate question is whether a reasonable juror could conclude that Plaintiff's request for accommodations caused his discharge. *Rowlands*, 901 F.3d at 801.

The Plaintiff claims that a jury could make the requisite determination because there is suspicious timing between his request for an accommodation and his termination from employment nineteen days later. Of course, the facts of this case, even when considered most favorably to Plaintiff, show that there were other factors upon which Defendant based its decision—Plaintiff's unknown surgery date and corresponding unidentified return to work date. Defendant's termination letter identified the indefinite time frame upon which Plaintiff could return to work as the basis for its employment decision.

A plaintiff relying on suspicious timing must ordinarily present other evidence that the employer's explanation for the adverse action was pretext for retaliation. *Harden v. Marion Cty.*

13

*Sheriff's Dep't*, 799 F.3d 857, 864–65 (7th Cir. 2015); *Simpson v. Office of Chief Judge of Cir. Ct. of Will Cty.*, 559 F.3d 706, 713–14 (7th Cir. 2009). "The mere fact that one event preceded another does nothing to prove that the first event caused the second. . . . [O]ther circumstances must also be present which reasonably suggest that the two events are somehow related to one another." *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) (quoting *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000)).

Plaintiff has provided no evidence from which a jury could conclude that Plaintiff's request for an accommodation, and not his indefinite absence and inability to perform his duties, was the motivating factor for the decision to terminate his employment. He repeats his argument that Defendant's insistence that the leave was indefinite is unworthy of belief because his doctor only indicated a need for up to twelve weeks for post-surgery recovery. As explained above, this argument ignores the documentation that was provided to Defendant, which indicated a nearly three-month absence until January 4, 2018, and the subsequent information that surgery would not take place until Plaintiff obtained a cardiologist's clearance. Moreover, in the period leading up to surgery, Plaintiff would not be coming to work.

Plaintiff also points to his testimony that, when he first reported his accident to Link in late August 2017, Link indicated that Plaintiff's job would be in jeopardy if he filed for worker's compensation, "which can reasonably be inferred to display Link's feelings about employees who engage in protected activity." (Pl.'s Brief 16.) Even if a jury credited Plaintiff's statement, this is not evidence that Defendant's decision to terminate Plaintiff's employment because he was unable to come to work to perform his job was a pretext for retaliation. When it comes to pretext, "'[t]he question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered' for the adverse action." *Liu v. Cook Cty.*, 817

F.3d 307, 316 (7th Cir. 2016) (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011)).

The information known to Defendant was that Plaintiff would not be able to come to work until as many as twelve weeks after his surgery, and that his surgery had not been scheduled. Additionally, Plaintiff could not perform any of the duties of his Safety Manager position when he was not on-site. The statement about worker's compensation does not tend to show that Defendant did not honestly believe that Plaintiff's extended absence would cause an undue hardship on the company. Plaintiff's disagreement with Defendant's handling of his situation is not evidence that Defendant lied about the reason it terminated his employment.

Because the factual record, taken as a whole, could not lead a rational trier of fact to find for Plaintiff, there is nothing for a jury to do with respect to Plaintiff's retaliation claim, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and Defendant is entitled to judgment as a matter of law.

**C.      ERISA—Retaliation and Discrimination**

Plaintiff is pursuing a claim under § 510 of ERISA, which prohibits employers from frustrating their employees' attainment or enjoyment of benefit rights. It is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for . . . the purpose of interfering with the attainment of any right to which such participant may become entitled under" the employee benefit plan. 29 U.S.C. § 1140. To recover under § 510, an employee must show that the employer terminated him with the specific intent to interfere with his ERISA rights. *See Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994); *Meredith v. Navistar Int'l Transp. Co.*, 935 F.2d 124, 126 (7th Cir. 1991); *see also Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005) (noting that loss of benefits "as a result of an

employer's action is not, by itself, sufficient to prove a violation of § 510;" rather, "[t]he employer must have the specific intent to deprive an employee of his plan rights").

Plaintiff's argument is that Defendant interfered with his ability to obtain short-term disability benefits when it agreed to let him work from home. This made him ineligible for the benefits. Yet, it then proceeded to terminate his employment, despite having offered the accommodation that made him ineligible for benefits. He further believes that his termination insured that his employer's insurance would not be required to pay for expensive surgery that he was planning to undergo. (Pl.'s Brief 17.)

Plaintiff has not presented evidence from which a jury could conclude that Defendant's employment action was taken for the purpose of interfering with Plaintiff's benefits. If the decision to permit Plaintiff to work from home had an incidental impact on Plaintiff's benefits, that does not establish a claim. "No violation will arise where the deprivation was simply the consequence of a decision that had the incidental effect of affecting an employee's benefits." *Isbell*, 418 F.3d at 796. In the end, the same legitimate, non-discriminatory, non-retaliatory reason that supported Defendant's decision to terminate Plaintiff's employment applies to foreclose his ERISA claim.

## STATE LAW CLAIMS

For the reasons stated above, the Court grants Defendant's summary judgment motion on the ADA and ERISA claims. Because that disposition results in the dismissal of all claims over which the Court has original jurisdiction, *see* 28 U.S.C. § 1367(c)(3), the Court must address whether to retain jurisdiction over the state law claims and rule on Defendant's motion for summary judgment.

As the Seventh Circuit consistently has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all

federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims"); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendant state-law claims rather than resolving them on the merits"). Yet the court of appeals has discussed "three well-recognized exceptions" to the general rule that "when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright*, 29 F.3d at 1252. As the court has explained, occasionally there are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point to a federal decision of the state-law claims on the merits." *Id.*

The first example that the court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Wright*, 29 F.3d at 1251. That concern is not present here, however, because Indiana law gives a plaintiff three years from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. *See* Ind. Code § 34-11-8-1.

The second exception recognized in *Wright* applies when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." 29 F.3d at 1251 (quoting *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1347–48 (7th Cir. 1986)). Here, although the Court has devoted resources to the disposition of the federal claim on summary judgment, it has not delved substantively into the state law claims. *See Davis*, 534 F.3d at 654 ("the district court disposed of the federal claims on summary judgment,

17

and so 'substantial judicial resources' have not yet been committed to the case"). Thus, while there clearly are instances in which "a district court should exercise supplemental jurisdiction over pendent state law claims for reason of judicial efficiency," *Miller Aviation v. Milwaukee Cty. Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001), this is not one of them.

The third circumstance to which the court of appeals has pointed in which disposition of pendent state law claims may be appropriate "occurs when it is absolutely clear how the pendent claims can be decided." *Wright*, 29 F.3d at 1251. For example, "[i]f the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter claim to the state court." *Id*. In addition, if the state-law claims are "patently frivolous," they should be resolved right away in the federal court. *Id*. However, "[i]f the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction." *Id*. The Court's determination that Plaintiff was not discriminated against on the basis of his disability or in violation of ERISA does not dispose of Plaintiff's claim that he was discriminated against on the basis of his potential worker's compensation claims or that he was not paid all the wages that he was due. The Court also concludes that the state law claims are not patently frivolous or obviously lacking in merit.

In sum, the Court finds that none of the exceptions to the "usual practice" applies in this case. Relinquishing jurisdiction will ensure that federal intrusion into areas of purely state law is minimized. Accordingly, the Court denies Defendant's motion for summary judgment on the state law claims without prejudice and dismisses those claims with leave to refile in state court.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant Prestress Services Industries, LLC's Motion for Summary Judgment [ECF No. 22] with respect to Plaintiff's federal claims

under the ADA and ERISA. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff on the federal claims. Plaintiff's state law claims are dismissed without prejudice to refiling in state court.

SO ORDERED on March 2, 2020.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT